**CALMAR, INC., Plaintiff,**

v.

**EMSON RESEARCH, INC., Defendant.**

**No. CV 92–4770 DT (JGx).**

United States District Court,
C.D. California.

Feb. 22, 1994.

---

Walter D. Ames, Lawrence R. Radanovic, Watson, Cole, Grindle & Watson, Washington, D.C., and David E. Wheeler, Schlessinger & Wheeler, Beverly Hills, CA, for plaintiff.

Charles R. Brainard, Albert J. Breneisen, James E. Geringer, John W. Bateman and P. McCoy Smith, Kenyon & Kenyon, New York City, and Jonathan P. Chodos, Santa Monica, CA, for defendant.

ORDER **GRANTING** EMSON'S MOTION TO AMEND ITS ANSWER; ORDER **DENYING** EMSON'S MOTION TO BIFURCATE TRIAL OF THE ISSUE OF WILLFULNESS AND TO STAY DISCOVERY OF RELATED ATTORNEY OPINIONS; ORDER **GRANTING** EMSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TEVRIZIAN, District Judge.

### Background

This action arises out of an alleged patent infringement. Defendant Emson Research, Inc. ("Emson") alleges it has been making the accused pump sprayers (a ball type PMP pump sprayer which "burp" down the dip tube) since at least 1981.

On August 7, 1992, Plaintiff Calmar, Inc. ("Calmar") brought the instant action against Emson alleging that the pump sprayers manufactured and sold by Emson infringe Calmar's patent, U.S. Patent No. 4,051,983 ("the Anderson patent" or "the '983 patent"). Calmar, through its counsel, has since confirmed that it asserts its claims of patent infringement against these ball type sprayers whether they use a groove or a bump to "burp" down the dip tube.

On August 21, 1992, Emson brought to Calmar's attention, U.S. Patent No. 4,144,987 ("the Kishi patent"), which was not before the Patent and Trademark Office ("PTO") and which teaches the "down the dip tube" burping which Calmar had told the patent office was its invention. Emson also provided Calmar with the drawings of its pumps, and pointed out why its pumps did not infringe the Anderson patent.

On September 21, 1992, Emson answered the complaint, counterclaimed that the '983 patent was invalid, and that Calmar was unfairly competing with Emson by threatening its customers with suit on the patent after having knowledge of the Kishi patent.

On October 9, 1992, pursuant to Local Rule 6.2, the parties had an early meeting of counsel. During this meeting, counsel for Emson allegedly presented to Calmar's counsel a draft Request for Reexamination, which raises a new question of patentability under 35 U.S.C. § 103. The parties allegedly agreed that counsel for Calmar would be given time to consider it.

On October 26, 1992, counsel for both parties met so Calmar's counsel could respond to the patentability issues raised in the draft Request for Reexamination, and conclude a discussion of settlement. However, Calmar allegedly refused to discuss the Request for Reexamination except to say that it did not agree that its patent was invalid or that the Emson pump sprayers did not infringe the '983 patent.

Consequently, on November 10, 1992, Emson filed a Request for Reexamination of the '983 patent with the PTO. On November 20, 1992, Emson filed a Motion for Stay of Proceedings Pending Reexamination in this Court. On December 1, 1992, Calmar filed a Motion to Dismiss Emson's Counterclaim 1 for failure to state a claim of unfair competition pursuant to Federal Rule of Civil Procedure 12(b)(6). On December 21, 1992, this Court granted Emson's Motion for Stay of Proceedings Pending Reexamination of Calmar's Patent and granted Calmar's Motion to Dismiss Emson's Counterclaim 1.

On August 27, 1993, Calmar filed an Ex Parte Application Under Local Rule 7.18 to Lift the Stay of Proceedings. On August 30, 1993, this Court granted the Ex Parte Application and lifted the stay. On September 9, 1993, Defendant Emson filed an Opposition to Plaintiff's Ex Parte Application to Lift the Stay of Proceedings. On September 27, 1993, this Court confirmed that the Stay of Proceedings had been lifted as of August 30, 1993.

On September 7, 1993, Calmar filed a Motion for Preliminary Injunction seeking an Order enjoining Emson from manufacturing, using, selling, advertising or offering for sale its Model 40B pump sprayer during the pendency of the instant action and for a period not to exceed October 4, 1994, or from otherwise infringing Calmar's Anderson patent during that period. On October 4, 1993, this Court denied Calmar's motion holding that Calmar was not entitled to a preliminary injunction 838 F.Supp. 453.

On January 24, 1994, Emson filed a Motion to Amend Its Answer, a Motion to Bifurcate Trial of the Issue of Willfulness and to Stay Discovery of Related Attorney Opinions, and a Motion for Partial Summary Judgment. These Motions are now before this Court.

### Discussion

#### A. Standard

In deciding motions for summary judgment, this Court follows Federal Rule of Civil Procedure 56(c) and the following cases: *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Harper v. Wallingford,* 877 F.2d 728 (9th

Cir.1989); *California Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *Neely v. St. Paul Fire & Marine Insurance Co.*, 584 F.2d 341, 344 (9th Cir. 1978).

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. Fed.R.Civ.P. 56(e). However, no defense to an insufficient showing is required. *Neely v. St. Paul Fire & Marine Insurance Co.*, 584 F.2d 341, 344 (9th Cir.1978)

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511–12. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *Harper v. Wallingford*, 877 F.2d 728 (9th Cir.1989); *California Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

## B. *Emson's Motion to Amend Its Answer*

In its first motion, Emson seeks leave to amend its answer to add two additional affirmative defenses and counterclaims: (1) the defense of estoppel, barring Calmar from any recovery against Emson for alleged infringement of the '983 patent; and (2) the defense of failure to mark patented articles as required by 35 U.S.C. § 287. Calmar does not object to an amendment to Emson's answer asserting a defense based on Calmar's alleged failure to mark. Calmar does, however, object to granting Emson leave to amend its answer by adding an estoppel defense.

Fed.R.Civ.P. 15(a) provides that a party may amend its pleadings by leave of court, "and leave shall be freely given when justice so requires." The Ninth Circuit has held that Rule 15's policy of favoring amendments should be applied with "extreme liberality" and that absent bad faith, futility, undue prejudice or excessive delay, motions for leave to amend should generally be granted. *See DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987); *Miller v. Rykopp–Sexton, Inc.*, 845 F.2d 209, 214–215 (9th Cir.1988); *Wyshak v. City Nat. Bank*, 607 F.2d 824, 826–827 (9th Cir.1979).

Emson claims that discovery has revealed that Calmar examined Emson's pumps as early as 1979 and thereafter called to Emson's attention only a Calmar design patent. Emson allegedly responded by changing the design of their pump sprayers. According to Emson, Calmar's thirteen year delay in asserting the '983 patent affirmatively misled Emson into believing that Calmar would not assert other patents, including the '983 patent, against these pumps. *See* Motion to Amend at 4–5. Accordingly, Emson seeks to assert a fourth affirmative defense of estoppel and a second counterclaim for a declaratory judgment that Calmar's claim is entirely barred for reasons of estoppel. *See* Amended Answer and Counterclaims, ¶¶ 16, 26–35.

Calmar opposes Emson's attempt to assert an estoppel defense on several grounds.

First, Calmar asserts that Emson's proposed amendment would be futile. Calmar points out that Emson does not plead either that Calmar had knowledge of the infringing Emson structure or that Calmar knew of the existence of its possible infringement of the '983 patent. *See* Opposition at 4. According to Calmar, Emson does not allege such knowledge because evidence obtained through discovery indicates that Calmar was, in fact, unaware of Emson's infringing pump structure. *Id.*

Calmar further contends that Emson's failure to previously plead equitable estoppel as a defense, at the time it first asserted its laches defense, is inexcusable and that Calmar would be prejudiced by an amendment at this late date. *See* Opposition at 8. According to Calmar, no newly discovered evidence suddenly apprised Emson of a possible estoppel defense. On the contrary, Calmar claims Emson was aware of all facts giving rise to a defense of equitable estoppel before the instant litigation was commenced. Moreover, allowing Emson to amend might necessitate additional discovery and force Calmar to repeat many of its depositions. *See* Opposition at 8–9.

■ In light of the Ninth Circuit's policy favoring amendments, this Court is inclined to allow Emson leave to amend its answer adding additional affirmative defenses and counterclaims based upon the theory of equitable estoppel and Calmar's alleged failure to mark. The discovery cut-off date is not until March 31, 1994 and, as stated by Emson, issues relating to Calmar's delay in bringing the instant action and Emson's resulting economic and evidentiary prejudice have long been presented by Emson's laches defense. *See* Motion to Amend at 7. It is therefore unlikely that addition of an equitable estoppel defense will significantly expand the scope of discovery in this action or prejudice Calmar in any way. In regard to Calmar's attack on the merits of Emson's equitable estoppel defense, this Court believes that such arguments would be more appropriately raised in a motion for summary judgment.

Accordingly, this Court hereby **GRANTS** Emson's Motion to Amend its Answer and add affirmative defenses and counterclaims based upon equitable estoppel and failure to mark.

### C. *Emson's Motion to Bifurcate Trial of the Issue of Willfulness and to Stay Discovery of Related Attorney Opinions.*

Emson further requests an order pursuant to Fed.R.Civ.P. 42(b) to bifurcate the issue of willful patent infringement and to stay discovery of attorney opinions related to that issue until there is a determination that the '983 patent is valid, enforceable and infringed. *See* Motion to Bifurcate at 1–2.

As discussed, in the instant action, Calmar asserts its '983 patent against pumps which Emson has purportedly made and sold since 1979. Calmar also asserts that Emson's alleged infringement has been willful. *See* Complaint, ¶ 6. In defense, Emson denies the validity of the '983 patent, denies that there is any liability for infringement, and sets forth certain affirmative defenses. Emson further denies Calmar's charge of willful infringement. *See* Motion to Bifurcate at 2–3.

Emson has notified Calmar that in rebuttal to Calmar's willfulness charge, Emson will rely in part upon opinions rendered by Emson's attorneys which set forth their reasons as to why the '983 patent is neither valid nor infringed. Emson maintains that Calmar's subsequent request for production of these attorney opinions necessitated the instant motion to bifurcate trial of the issue of willfulness. *See* Motion to Bifurcate at 3.

■■ Pursuant to Fed.R.Civ.P. 42(b), the court "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial … of any separate issue." The decision as to whether to bifurcate a trial rests with the sound discretion of the trial court. *See United States v. 1,071.08 Acres of Land, Yuma and Mohave Counties,* 564 F.2d 1350, 1352 (9th Cir.1977). Motions to bifurcate are to be granted "on a case by case basis only when the separation will result in judicial economy and will not unduly prejudice any party." *Smith v. Alyseka Pipeline Service Company,* 538 F.Supp. 977,

982 (D.Del.1982). Factors to be considered when ruling on a Rule 42(b) motion include complexity of issues, factual proof, risk of jury confusion, difference between the separated issues, the chance that separation will lead to economy in discovery and, the possibility that the first trial may be dispositive of the case. *See Whitted v. Bronx Lebanon Medical Center,* 1986 WL 5098 (S.D.N.Y. 1986); *Baxter Travenol Laboratories, Inc. v. LeMay,* 536 F.Supp. 247 (S.D.Ohio 1982); and *Hoffman v. Merrell Dow Pharmaceuticals,* 857 F.2d 290 (6th Cir.1988).

Emson argues that production of Emson's opinions of counsel relating to the '983 patent would give Calmar access to confidential attorney-client communications, and would reveal to Calmar the mental impressions, conclusions, opinions, and legal theories of Emson's attorneys concerning this litigation. According to Emson, granting Calmar such access would prejudice Emson without any legitimate offsetting benefit to Calmar. At the same time, Emson maintains that staying discovery of Emson's attorney opinions would not prejudice Calmar. Emson states that Federal Circuit case law supports the granting of a separate trial on willfulness under circumstances similar to these and concludes that granting Emson's motion to bifurcate would allow discovery and trial to proceed in the most efficient manner while avoiding prejudice to Emson. *See* Motion to Bifurcate at 5–7.

This Court is not inclined to bifurcate trial of the issue of willfulness. It is difficult for this Court to see how ordering separate jury trials and staying discovery of Emson's attorney opinions would provide the most efficient method of handling the instant action. Bifurcation of the issue of willfulness and a stay of discovery would only complicate the instant proceedings and cause needless delay.[1] Although certain discovery problems may arise with respect to Emson's attorney opin-

ions, this Court is of the opinion that these potential problems can be effectively resolved without bifurcating the issue of willfulness.

Accordingly, this Court hereby **DENIES** Emson's Motion to Bifurcate Trial of the Issue of Willfulness and to Stay discovery of Related Attorney Opinions.

### D. *Emson's Motion for Partial Summary Judgment*

Emson next seeks partial summary judgment that Calmar failed to comply with 35 U.S.C. § 287(a), the patent marking statute, and that Calmar is therefore not entitled to recover any damages prior to providing Emson with actual notice of its infringement allegations. *See* Motion for Partial Summary Judgment at 1.

In response, Calmar admits that when the '983 patent was issued on October 4, 1977, Calmar did not immediately thereafter comply with the marking provisions of 35 U.S.C. § 287(a). Calmar asserts, however that from at least January 1, 1985 to the present, it did perform sufficient acts to inform Calmar's customers of the existence of the '983 patent and that damages for Emson's alleged infringement are therefore fully recoverable.[2] *See* Opposition at 1–2.

#### 1. *Section 287(a)*

According to 35 U.S.C. § 287(a),

Patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the paten-

---

1. For example, in the event that Emson is found to have infringed the '983 patent, the parties would be forced to resume discovery as to the issue of willfulness and hold a second trial requiring additional time and expense.

2. Calmar states that it has not yet been able to determine the precise date in 1984 that it began

distribution of the Mark II Fact Sheet but that regardless, because the present action was instituted on August 22, 1992, the applicable six year statute of limitations prevents recovery of damages prior to August 22, 1986. *See* Opposition at 2. Therefore, according to Calmar, damages are recoverable from August 22, 1986.

tee in any action for infringement except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a).

"[T]he clear meaning of this section is that the patentee or his assignee, if he makes or sells the article patented, cannot recover damages against infringers of the patent, unless he has given notice of his right, either to the whole public, by marking his article 'Patented,' or to the particular defendants, by informing them of his patent, and of their infringement of it." *Dunlap v. Schofield,* 152 U.S. 244, 247, fn. 10, 14 S.Ct. 576, 577, fn. 10, 38 L.Ed. 426 (1894).

The statute is intended "to give patentees the prior incentive to mark their products and thus place the world on notice of the existence of the patent." *See American Medical Systems, Inc. v. Medical Engineering Corp.,* 6 F.3d 1523 (Fed.Cir.1993).

The burden of proving notice, either by marking or by actual notice, rests on the patent owner. *See Dunlap,* 152 U.S. at 247–248, 14 S.Ct. at 577; *MacPike v. American Honda Co., Inc.,* 1993 WL 632261 at *5, 9, 1993 U.S.Dist.LEXIS 18970 at 14 (N.D.Fla. 1993).

### 2. Calmar never placed the '983 patent number on any of its patented pump sprayers.

Whenever practicable, section 287(a) requires a patent holder to place the word "patent" or the abbreviation "pat.", together with the number of the patent directly on the patented article. *See* 35 U.S.C. § 287(a).

According to Emson, Calmar never marked Calmar's Mark II and Mark V pumps, both of which are asserted by Calmar to be within the scope of the claims of the '983 patent. In support of this position, Emson points to the deposition testimony of Walter Anderson, inventor of the '983 patent-in-suit. Anderson testified that patent number '983 was never placed directly onto either the Mark II or the Mark V pumps. *See* Motion for Partial Summary Judgment at 4.

Calmar does not dispute this assertion. Thus, this Court concludes that Calmar did not place the '983 patent number directly on its pumps.

### 3. Calmar did not mark its pump sprayer packaging in compliance with the alternative marking provisions of section 287(a).

In the event that a patented article is of such character that it cannot be marked, a patentee may nonetheless satisfy the marking requirements of section 287(a) by fixing a label with notice of the patent either to the article or to the package wherein one or more of the patented articles is contained. *See* 35 U.S.C. § 287(a).

Emson maintains that Calmar could have engraved the '983 patent number into the mold cavities in which its pumps are formed and that Calmar's failure to do so entitles Emson to summary judgment that Calmar did not comply with the marking requirements of section 287(a). This Court need not discuss the feasibility of marking the Calmar pumps since this Court concludes that, even if Calmar was not required to mark the pumps themselves, Calmar did not adequately comply with the section 287(a) alternative marking provisions by labelling the packages in which its pumps were contained.

According to Emson, Calmar admits that neither the shipping carton in which the pumps were shipped nor the label placed on the cartons bore the '983 patent number. In fact, Emson argues, the only place in which the '983 patent was included was a piece of promotional material entitled "Fact Sheet" printed in 1989. Because this Fact Sheet was not shipped with the patented pumps, Emson asserts it does not constitue a "package" within the meaning of section 287(a) and is insufficient as a matter of law to satisfy the statutory marking requirements. Emson further states that any other Fact Sheets pertaining to the Calmar pumps would also fail to satisfy section 287(a) since such information was not distributed to the product's end-user and failed to provide adequate notice of Calmar's patent rights to the public or

to Calmar's competitors. *See* Motion for Partial Summary Judgment at 8–11.

Calmar responds that, in light of the permissive nature of section 287(a) along with Calmar's efforts to inform its customers and prospective customers of its patent rights, Calmar did its best to comply with the marking requirements of section 287(a). In support of its position, Calmar presents evidence indicating that, as part of its business routine, Calmar provided Calmar Fact Sheets to Calmar's customers and prospective customers along with samples of Calmar's Mark II products. *See* Fernandez Decl., ¶¶ 9, 11. Calmar also asserts that, on occasion, Mark II sprayer samples have been shipped in cartons containing packing slips and Fact Sheets. *Ibid.*, ¶ 12. According to Calmar, these Fact Sheets, distributed as early as some time in 1984, describe the '983 pumps and bear the number of the '983 patent thus satisfying the statutory requirements of section 287(a). *See* Opposition at 5–9.

Upon review of Calmar's arguments and its evidence in support thereof, this Court concludes that, as a matter of law, Calmar did not comply with the marking requirements of section 287(a).

Calmar argues at length that the Federal Circuit has specifically held that section 287(a) is "permissive" and concludes that this Court should interpret the statute liberally. *See* Opposition at 6, 9. However, Calmar offers no authority whatsoever for the proposition that the provisions of section 287(a) may be satisfied without either marking the patented article itself or, at least, including something with the packages in which the patented articles are shipped which would indicate the article's patent number.

■ Calmar does not claim that the packages in which the Calmar pump sprayers were shipped to customers included a Fact Sheet or that the packages were otherwise marked with the '983 patent number. At most, the evidence presented by Calmar indicates that Fact Sheets were routinely left with actual and prospective customers upon delivery of Calmar product samples and that, on occasion, Fact Sheets were included with shipments of Calmar pump sprayer samples to such customers. Both the clear language

of section 287(a) and relevant case law indicate that merely marking some literature associated with a patented article is insufficient to satisfy the marking requirements of the statute. *See In re Yarn Processing Patent Validity Litigation,* 602 F.Supp. 159, 169 (W.D.N.C.1984); *Briggs v. Wix Corporation,* 308 F.Supp. 162, 171 (N.D.Ill.1969); *Lemelson v. Fisher Price Corp.,* 545 F.Supp. 973, 975 (S.D.N.Y.1982). Moreover, adequately marking a patented product only on occasion, and not as a matter of routine, is insufficient to support a finding of compliance with section 287(a). *See Hazeltine Corporation v. Radio Corporation of America,* 20 F.Supp. 668 (D.C.N.Y.1937) (marking less than 65 percent of patented articles sold held insufficient compliance); *American Medical Systems,* 6 F.3d at 1537 (notice must be substantially consistent and continuous in order for party to avail itself of constructive notice provisions of statute).

In this Court's opinion, Calmar did not adequately mark the packaging in which its pump sprayers were shipped to customers and therefore did not comply with the alternative marking provisions of section 287(a). Thus, even if Calmar was excused from marking its actual pump sprayers with the '983 patent number, Calmar has failed to demonstrate compliance with the marking provisions of section 287(a).

> *4. Calmar's argument that, in all probability, Emson received actual notice of the '983 patent is irrelevant to the instant motion.*

In a last ditch attempt to avoid partial summary judgment, Calmar argues that in all probability, several Calmar Fact Sheets bearing the '983 patent number found their way into the possession of one or more Emson salesmen. Calmar concludes that Emson therefore received actual notice of Calmar's '983 patent and of Emson's infringement of the '983 patent. *See* Opposition at 9–12.

Calmar's arguments have no bearing on the issues raised in Emson's instant motion for partial summary judgment. In its moving papers, Emson asserts that the undisput-

ed facts demonstrate that Calmar did not comply with the marking provisions of section 287(a), and therefore, that Calmar may not recover damages for infringement of the '983 patent prior to the date on which Emson was provided with actual notice of the alleged infringement. *See* Motion for Partial Summary Judgment at 1. Emson does not address the issue of when Emson received actual notice of the '983 patent and the alleged infringement.

Thus, the only issue presently before this Court is whether Calmar marked either its pump sprayers or the packages containing its pump sprayers as required by section 287(a). This Court has concluded that Calmar failed to satisfy the statutory marking requirements. The question of when Emson received actual notice of the existence and infringement of the '983 patent is not now before this Court and is therefore reserved for another day.

Accordingly, this Court hereby GRANTS Emson's Motion for Partial Summary Judgment and finds that Calmar failed to either mark its pump sprayer or the packages wherein such pump sprayers is contained as required under 35 U.S.C. § 287(a) and that Calmar may not recover damages accruing prior to Emson receiving actual notice of its infringement.

In summary, this Court hereby:

GRANTS Emson's Motion to Amend its Answer;

DENIES Emson's Motion to Bifurcate Trial of the Issue of Willfulness and to Stay discovery of Related Attorney Opinions;

GRANTS Emson's Motion for Partial Summary Judgment.

IT IS SO ORDERED.