### KOS PHARMACEUTICALS, INC., Plaintiff,

v.

### BARR LABORATORIES, INC., Defendant.

No. 02 Civ. 1683(VM).

United States District Court, S.D. New York.

Oct. 16, 2003.

---

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Kos Pharmaceuticals ("Kos") commenced three separate actions in the instant matter, later consolidated by the Court into one case, alleging willful infringement by defendant Barr Laboratories, Inc. ("Barr") of five United States patents held by Kos pertaining to a sustained-release niacin product marketed by Kos under the brand name, Niaspan.[1] Barr has filed Abbreviated New Drug Applications ("ANDAs") with the United States Food and Drug Administration ("FDA") challenging the validity of Kos's patents, and/or Kos's potential claims of infringement of the patents-in-suit, and seeking approval to produce and sell a generic form of Kos's niacin product, thereby prompting the litigation at hand. Now before the Court is Barr's motion, pursuant to Federal Rule of Civil Procedure 42(b), to bifurcate consideration of the action so as to address liability and willfulness issues in separate trials and to stay discovery with respect to willfulness. For the reasons dis-

---

1. An earlier Decision and Order by this Court addressing Barr's counterclaims sets forth relevant factual background regarding the parties' respective claims. That ruling is reported at *Kos Pharmaceuticals, Inc. v. Barr Laboratories, Inc.,* 242 F.Supp.2d 311 (S.D.N.Y.2003).

cussed below, the motion is granted in part and denied in part.

## I. BACKGROUND AND THE PARTIES' ARGUMENTS

This case presents a recurring debate uniquely pervasive in patent litigation. In countless reported cases, time after time the controversy features, as if in a familiar script from a set piece, defendants presenting the same arguments in favor of their requests for a bifurcation of the action into separate trials for liability and willfulness and/or damages, while plaintiffs predictably counter with their own customary reasoning against, each side propounding in turn why a trial so divided would or would not produce incalculable prejudice, inconveniences, delays, increased costs and untold other impositions and inefficiencies. In addressing these disputes, the courts have been no less divided; the reported rulings often mirror the divergence in the respective contentions advanced by the parties. The case at bar is no exception.

Barr asserts that in connection with its development of a generic version of Niaspan, it engaged counsel to assess issues concerning the validity and infringement of the Kos patents at issue and to advise on legal strategies for Barr to pursue in the event Kos instituted infringement litigation. In this connection, Barr obtained eight lengthy legal opinions, which Barr indicates encompass nearly 1200 pages and 19 volumes of appendices. Kos, having learned of the existence of these opinions through Barr's privilege log, served a notice seeking the deposition of Robert C. Millonig ("Millonig"), the attorney who prepared the opinions. Kos also requested the designation of a witness to testify concerning the opinions. Barr points out that Millonig is one of its attorneys of record in the instant litigation. It contends that Barr would suffer extensive and irreparable prejudice if it were compelled at this point,

long prior to trial on liability, to waive its attorney-client privilege and disclose the legal opinions in question. The harm that Barr asserts derives from the fact that the documents, some comprising attorney's work product, contain highly privileged legal analysis, strategies and theories that would reveal aspects of Barr's trial plans. To guard against this prospect, Barr moves the Court for an order bifurcating trial of the proceeding and staying discovery as to Kos's claim of willfulness of the alleged infringement until issues relating to liability are determined at trial by the factfinder.

Barr argues that the procedure it proposes would not only avoid prejudice to it, but serve the interest of judicial economy. Specifically, Barr maintains that, because it expended considerable resources seeking legal advice and relied on counsel's opinions in proceeding with the production of the allegedly infringing product, a finding of willful infringement here is highly unlikely, and that, in any event, if it were found not liable for infringement, the second trial as to willfulness would be unnecessary. Moreover, Barr cites to the complexity of the myriad issues, claims and defenses involved in the case and the voluminous record the litigation will generate for the liability phase alone. According to Barr, superimposing discovery pertaining to willfulness to a proceeding already so complicated and extensive, would demand considerable allocation of additional resources from the Court and the parties, inconvenience witnesses and occasion delays that will significantly prolong resolution of the merits.

In support of its request, Barr contends that courts routinely bifurcate willfulness from liability issues in patent infringement actions. For this proposition Barr cites to a string of recent cases from various districts.[2]

---

2. *See, e.g., Aptargroup, Inc. v. Owens–Illinois, Inc.*, No. 02 C 5058, 2003 WL 21557632 (N.D.Ill. July 3, 2003); *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519 (D.Del.2002); *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ.A. 01–557–JJF, 2002 WL 1901268 (D.Del. Aug. 16, 2002); *Allergan Inc. v. Pharmacia Corp.*, No. Civ.A. 01–141–SLR, 2002 WL 1268047, at *2 n. 1 (D.Del. May 17, 2002); *Yamaha Hatsudoki Ka-* *bushiki Kaisha v. Bombardier Inc.*, 59 U.S.P.Q.2d 1088 (C.D.Cal.2001); *Pfizer, Inc. v. Novopharm Ltd.*, 57 U.S.P.Q.2d 1442 (N.D.Ill.2000); *Princeton Biochemicals Inc. v. Beckman Instruments Inc.*, 180 F.R.D. 254 (D.N.J.1997); *Key Tech., Inc. v. Simco/Ramic Corp.*, 137 F.R.D. 322, 325 (D.Or.1991); *Rohm and Haas Co. v. Mobil Oil Corp.*, 654 F.Supp. 82 (D.Del.1987).

■ Kos responds, with equal intensity, persuasiveness and weighty authority, that it is the bifurcation of this case as Barr proposes that would create undue delay, inconvenience the parties and witnesses, add expense and produce more cumbersome litigation, retard resolution of the merits of the dispute and thereby, to Kos's prejudice, facilitate Barr's ability to infringe Kos's Niaspan patents. Responding to the precedents Barr relies upon in favor of bifurcation, Kos points out that most of those cases involved issues pertaining to determination of damages arising from actual infringement, unlike the instant ANDA litigation, where no damage issues are implicated because Barr's accused infringing product has not yet reached the market. According to Kos, because the litigation at hand arises from ANDA proceedings and Kos has sought only equitable relief,[3] a jury trial is not required,[4] the case will be less complicated to try and thus Barr's fears of substantial prejudice are unfounded.

Moreover, Kos contends that in the absence of both damages claims and allegations of bad faith or misconduct on Kos's part, the litigation is less complex than Barr makes it out to be, and the case thus not one warranting the separate supplemental discovery and pretrial proceedings, the added trial before a different jury and the various other inefficiencies ordinarily associated with bifurcation. *See Johns Hopkins Univ. v. CellPro,* 160 F.R.D. 30, 36 (D.Del.1995) ("[s]taying discovery on the advice of counsel defense and ordering a separate trial on willfulness or damages . . . until after liability has been established builds difficult delays and complications into the case.")

## II. *DISCUSSION*

■ Federal Rule of Civil Procedure 42(b) grants the district courts broad discretion to order separate trials of discrete issues or claims if the court finds that bifurcation would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. . . ." Fed.R.Civ.P. 42(b). The Rule is thus actuated by two central aims: fairness and efficiency. As formulated, the first objective is preventive—to avoid prejudice to the parties; the other is more affirmative—to foster more convenient, expeditious and economical administration of justice in the interest of all concerned.

■ Paradoxically, however, in the ordinary case, dividing the ultimate resolution of a dispute into separate trials equates to a formula that inevitably works against some or all of the very values of convenience, expedition, economy and avoidance of prejudice that Rule 42(b) prescribes as grounds to warrant bifurcation. Extending the adjudication into two or more proceedings necessarily implicates additional discovery; more

**3.** A determination of willfulness is relevant to damages insofar as it may entitle the prevailing party to seek treble damages. *See* 35 U.S.C. § 284; *Ryco, Inc. v. Ag–Bag Corp.,* 857 F.2d 1418, 1429 (Fed.Cir.1988). Kos does not explain, and the Court shall be seeking clarification during the course of remaining proceedings, what bearing its claim of willfulness and a determination to that effect would have in this case if indeed Kos is not claiming that it has suffered any monetary damages, given that Barr has not marketed any of the allegedly infringed products. For the purposes of resolving the instant dispute, the Court assumes that Kos will establish a relevant connection of its assertion of willfulness despite the absence of a claim of damages and in connection with a potential award of injunctive relief only.

**4.** The parties disagree over whether the case is properly triable by a jury or by the Court. Kos, citing relevant case law, maintains that because the only remedy Kos seeks is equitable, in the form of injunctive relief, Barr is not entitled to demand a jury. *See Tegal Corp. v. Tokyo Electron Am., Inc.,* 257 F.3d 1331, 1339–41 (Fed.Cir. 2001); *Sanofi–Synthelabo v. Apotex, Inc.,* 64 U.S.P.Q.2d 1684 (S.D.N.Y.2002); *Biovail Labs., Inc. v. Torpharm, Inc.,* No. 01 C 9008, 2002 WL 1732372 (N.D.Ill. July 25, 2002); *Minnesota Mining & Mfg. Co. v. Alphapharm Pty. Ltd.,* No. CIV. 99–13, 2002 WL 1352426 (D.Minn. Mar. 20, 2002); *Pfizer Inc. v. Novopharm Ltd.,* No. 00 C 1475, 2001 WL 477163 (N.D.Ill. May 3, 2001). Barr, relying on other authority, contests Kos's assertion that Barr does not have a right to trial by jury. *See Warner–Lambert Co. v. Purepac Pharm. Co.,* No. Civ.A. 98–2749, 2001 WL 883232 (D.N.J. Mar. 30, 2001). It argues that the prejudice to Barr from being forced prematurely to decide whether to assert the advice of counsel defense would be the same whether the case is tried before the Court or a jury. The Court does not address this issue because, under the approach adopted below, which factfinder is used does not matter.

pretrial disputes and motion practice; empaneling another jury or imposing more on the jurors who decide the earlier phase of the litigation; deposing or recalling some of the same witnesses; and potentially engendering new rounds of trial and post-trial motions and appeals. The inconveniences, inefficiencies and harms inherent in these probable consequences—to the parties and third parties, to the courts, and to the prompt administration of justice—weigh against separation of trials and suggest that, for those probable adverse effects to be overcome, the circumstances justifying bifurcation should be particularly compelling and prevail only in exceptional cases. *See, e.g., Real v. Bunn–O–Matic Corp.*, 195 F.R.D. 618, 620 (N.D.Ill. 2000) ("The piecemeal trial of separate issues in a single lawsuit is not to be the usual course. . . . Bifurcation in patent cases, as in others, is the exception, not the rule.") (internal citation omitted); *Fuji Mach. Mfg. Co. v. Hover–Davis, Inc.*, 982 F.Supp. 923, 924 (W.D.N.Y.1997); *Intellectual Prop. Dev. Corp. v. UA–Columbia Cablevision of Westchester, Inc.*, 34 U.S.P.Q.2d 1605, 1606 (S.D.N.Y.1995); *Laitram Corp. v. Hewlett–Packard Co.*, 791 F.Supp. 113, 114 (E.D.La. 1992); 8 James W. Moore et al. *Moore's Federal Practice* ¶ [42.20[4][a]] (3d ed.2003); *see also Gaus v. Conair Corp.*, No. 94 Civ. 5693, 2000 WL 1277365, at *3 (S.D.N.Y. Sept. 7, 2000) (noting that it is often appropriate to bifurcate patent cases because damages are sometimes complex and unrelated to issues of liability, but denying bifurcation in that case because it would not facilitate judicial economy).

Nonetheless, because the court's discretion under Rule 42(b) is extensive and the governing criteria so general, application of the governing standards does not lend itself to uniform practice. In examining the many precedents that give expression to the Rule, the Court has found no coherent or consistent pattern, but rather a more prevalent inclination to a case-by-case approach that yields seemingly conflicting results, thus providing some support to the diametric positions both parties here espouse. *See, e.g., Aptargroup*, 2003 WL 21557632, at *1 (noting

that "[a] review of [the] cases discloses such varied circumstances that an extended analysis of each case serves little purpose"); *Pfizer Inc.*, 2000 WL 1847604, at *1 ("The decision to order separate trials is made on a case-by-case basis and is committed to the broad discretion of the trial court.").

■ The Court is not persuaded that the complete bifurcation of the instant case into two distinct trials, as Barr advocates, is warranted by the circumstances prevailing here. Insofar as patent litigation goes, this case does not present any of the major complexities that on balance ordinarily might tip in favor of bifurcation. The dispute involves only two parties. While the case relates to five patents-in-suit, these derive from overlapping inventors and a common patent application and pertain to essentially the same product, varying only as to quantities. As stated above, no claims of damages are at issue here,[5] a complication that generally raises sufficiently independent issues to support bifurcation. *See Eaton Corp. v. Auburn Gear, Inc.*, 8 U.S.P.Q.2d 1373, 1374 (N.D.Ind. 1988) ("The separation of the liability and damages issues in patent cases is firmly grounded in the case law, undoubtedly due to the complexity of such cases, the lack of any substantial community among the issues, and the hazard that a lengthy and expensive trial on the damages issue will be erased by reversal of the patent owner's judgment on appeal."). Nor does the action entail allegations of illegality or bad faith on the part of Kos, or ancillary issues such as antitrust or unfair competition, also typically associated with patent litigation justifying separate trials.

The claims that do remain to be adjudicated encompass issues pertaining to infringement, validity and willfulness. With regard to the application of Rule 42(b) to the resolution of these issues, the Court has found some divergence in the procedures followed by various courts. One view maintains that infringement and willfulness claims are sufficiently independent from each other and that trying them together holds the risk of confusing and prejudicing the jury. *See Aptar-*

---

5. *See supra*, n. 3.

*group*, 2003 WL 21557632, at *1 ("[W]e think there is a basis for believing that an 'intent' issue mixed up with an infringement issue will have a tendency to confuse and possibly prejudice the jury, without any real relevant evidence benefit."); *Pfizer*, 2000 WL 1847604, at *3 (finding no significant overlap between issues of liability and willfulness); *Princeton Biochems.*, 180 F.R.D. at 258 ("[a] determination regarding patent infringement ... does not require a detailed inquiry into the elements of willful infringement").

Conversely, other courts hold that evidence of willful infringement is integrally related to issues concerning liability and that the two determinations cannot be facilely disentangled from one another. *See Intellectual Prop. Dev. Corp.*, 34 U.S.P.Q.2d at 1607 (noting that "issues of liability and willfulness closely intertwine") (citing *Keyes Fibre Co. v. Packaging Corp. of America*, 763 F.Supp. 374, 375 (N.D.Ill.1991) ("The evidence relating to [defendant's] state of mind when it committed the infringement ... cannot be neatly separated from the underlying liability issue of whether the patent was infringed upon in the first place.")); *THK Am., Inc. v. NSK Co. Ltd.*, 151 F.R.D. 625, 629–30 (N.D.Ill.1993) ("A willfulness determination, that is, the defendant's state of mind when it infringed the patent, is a finding of fact *inextricably* bound to the facts underlying the alleged infringement ... [B]ecause willfulness is determined from the totality of the circumstances, it is the reason why some courts prefer to include the issue of willfulness with the liability phase of a bifurcated trial.") (emphasis in original) (citing *Kimberly–Clark Corp. v. James River Corp. of Virginia*, 131 F.R.D. 607, 609 (N.D.Ga.1989)).[6]

Were this case one that involved claims of extensive damages from actual production and marketing of the infringed product, thus presenting a discrete issue that potentially might justify bifurcation, the question of willfulness arguably could be similarly deferred until the separate damages trial. In fact, most of the cases in which bifurcation of the willfulness issue has been found warranted have also entailed claims of damages and a finding by the court of a factual overlap between issues regarding willfulness and those pertaining to damages, which provided a distinct ground supporting a separate trial. *See, e.g., Aptargroup*, 2003 WL 21557632, at *1; *Yamaha*, 2001 WL 501354, at *1–3; *Pfizer*, 2000 WL 1847604, at *3; *Princeton Biochems.*, 180 F.R.D. at 255; *Sage Prods, Inc. v. Devon Indus., Inc.*, No. CV 93–2403, 1994 WL 791601, at *3 (C.D.Cal. Jan. 25, 1994); *Scientific–Atlanta, Inc. v. General Inst. Corp.*, 27 U.S.P.Q.2d 1158, 1159–60 (D.Md. Feb.2, 1993); *but see St. Clair Intel. Prop. Consults., Inc.*, No. Civ A 01–557, 2002 WL 1901268, at *4 (D.Del. Aug. 16, 2002) (bifurcating trial as to willfulness but denying motion to bifurcate as to damages); *Allergan*, No. Civ. 01–141, 2002 WL 1268047, at *2 n. 1 (bifurcating trial as to willfulness due to broad scope of discovery and potential prejudice to plaintiffs).

■ This Court, however, is persuaded that trial practicalities and the weight of authority tilt the application of Rule 42(b) against separation of willfulness from liability, absent a basis for bifurcation justified by damages claims. Consequently, the Court finds the better view to hold that the issue of willfulness is not sufficiently discrete and readily severable from matters of infringement, as the determination of damages is more often recognized to be. Evidence supporting both matters tends to be sufficiently interrelated that it is likely to rely on substantially the same witnesses and documentation.

The decision whether a particular trial is bifurcated often turns on practicalities. *See THK Am., Inc.*, 151 F.R.D. at 633. As numerous courts have observed, "separate tri-

---

**6.** *See also Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 2001 WL 699856, at *3 (S.D.Ind. May 31, 2001) ("[W]illfulness is determined from the 'totality of the circumstances'.... That standard does not fit comfortably with bifurcation.") (quoting *Braun, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 822 (Fed.Cir.1992); *Calmar, Inc. v. Emson Research, Inc.*, 850 F.Supp. 861, 866 (C.D.Cal.1994)) ("Bifurcation of the issue of willfulness and a stay of discovery would only complicate the instant proceedings and cause needless delay"); *Caterpillar, Inc. v. Deere & Co.*, No. 96 C 5355, 1997 WL 17798, at *1–2 (N.D.Ill. Jan. 14, 1997); *Remcor Prods. Corp. v. Servend Int'l, Inc.*, No. 93 C 1823, 1994 WL 594723, at *1 (N.D.Ill. Oct. 28, 1994).

als on the issues of liability and willfulness would not promote the interests expressed in Rule 42. Rather than furthering convenience and judicial economy, separate trials would result in duplication of effort due to the overlapping evidence required to establish both liability and willfulness." *Remcor Prods.*, 1994 WL 594723, at *1 (citing *Keyes Fibre*, 763 F.Supp. at 375); *see also Caterpillar, Inc.*, 1997 WL 17798, at *1; *Kimberly–Clark*, 131 F.R.D. at 608–09; *Cardiac Pacemakers, Inc.*, 2001 WL 699856, at *2.

Contrary to Barr's contention, questions regarding infringement and willfulness cannot always be neatly disaggregated into distinct evidentiary foundations grounded on entirely different witnesses and documents. These matters are more commonly sufficiently interdependent as to render it probable that bifurcation would require a duplication of discovery proceedings, serial trials and, assuming the case were not tried by the Court, presentation of much of the same witness testimony and other evidence to different juries, consequently producing a source of unnecessary cost and inconvenience and undue delay.

Finally, the Court finds that, on balance, the delays, inconvenience and additional litigation costs attendant to bifurcation in this case would be more prejudicial to Kos. At issue here is not one patent, as was the case in some of the instances in which courts have bifurcated willfulness from infringement, but five, thus significantly affecting Kos's prospects of prevailing as to some of its claims. In the event Kos prevailed at the trial on liability on even one of its claims, the burdens associated with an entirely new round of pretrial proceedings and a second trial would fall predominantly on Kos. While the converse is also true that were Barr to succeed fully at the liability phase there would be no need for another trial at all, the Court is not convinced that on the basis of the sparse record before it sufficient evidence exists at this point, long before discovery is complete, to support a clear finding either that Barr did not infringe on the patents-in-suit or that if it did, it did not do so willfully, so as to justify a ruling in favor of bifurcation

at this stage on the basis of such a tenuous forecast of Barr's likelihood of success.

Barr's principal assertion of substantial irreparable prejudice is grounded in its concern over being compelled at this point in the proceedings to choose between waiving its attorney-client privilege, and thus potentially prejudicing its liability case by disclosing the extensive counsel's opinion and voluminous accompanying appendices upon which it allegedly relied in deciding to undertake the production of its generic form of Niaspan, or to forego a defense of reliance on counsel's advice in response to Kos's charge of willful infringement and risk an adverse determination of that claim. In support for its stance on this point Barr relies on a passage from the Federal Circuit's ruling in *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir.1991), and the doctrine it engendered in later cases. In what has come to be known as the *Quantum* dilemma, the Federal Circuit observed:

> Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera*, reveal that the defendant is indeed confronted with this dilemma.

*Id.* at 643–44; *see also Plasmanet, Inc. v. Apax Partners, Inc.*, No. 02 Civ. 9290, 2003 WL 21800981, at *2 (S.D.N.Y. Aug. 5, 2003); *Aptargroup*, 2003 WL 21557632, at *1; *St. Clair Intellectual Prop.*, 2002 WL 1901268, at *1–2; *Allergan*, 2002 WL 1268047, at *7 n. 1;

*Yamaha,* 59 U.S.P.Q.2d at 1090–91; *Novopharm, Ltd. v. Torpharm, Inc.,* 181 F.R.D. 308, 311 (E.D.N.C.1998); *Princeton Biochems,* 180 F.R.D. at 260.

The Court is mindful that the quandary the *Quantum* court identified poses substantial risks to Barr, and that in this case, given the still relatively early stages of the litigation, it would be particularly constraining and prejudicial to Barr's preparation of its defense at trial if it were compelled to turn over to Kos the legal opinions at issue. Simply put, it may be premature at this time to force that choice. *See F & G Scrolling Mouse, L.L.C. v. IBM Corp.,* 190 F.R.D. 385, 393 (M.D.N.C.1999).

However, that Barr should not be compelled at this stage to elect to disclose privileged documents or face other adverse consequences does not mean that, by that reason alone, the Court should accede to Barr's request to stay all discovery relating to willfulness and to bifurcate the trial. It is highly unlikely that the evidentiary basis Kos offers to bolster its claim of willful infringement would be rooted solely on what evidence Barr's legal opinions may or may not supply. To the contrary, it is likely that the grounds for any finding of willfulness would be supported by testimony and documentary proof generated by numerous other Barr witnesses. Thus, whatever recognized validity may sustain Barr's assertion of prejudice at this point as it relates to Barr's privileged opinions of counsel cannot be expanded to encompass deferring discovery from its other sources and witnesses.

The Court also recognized that some witnesses would have been unnecessarily inconvenienced in the event the issue of liability ultimately were adjudicated in Barr's favor, thereby altogether obviating the need to consider Kos's claims of willfulness. However, as between a choice, on the one hand, of inconvenience to such witnesses, many if not most of whom may be employees or agents of Barr, and, on the other hand, inconvenience and related burdens imposed on jurors, on other third parties, on judicial economy and efficiency in the administration of justice that would accompany bifurcation and a separate trial on willfulness, this Court finds that the balance of all the equities weighs heavily against conducting two trials in this case.

As a way to reconcile the diverse and overlapping interests colliding here, the Court contemplates, at least as a preliminary approach, the procedure described below. Barr's request to bifurcate the trial into liability and willfulness and stay all discovery as regards the latter will be denied at this point. Kos will be permitted to proceed with discovery and with preparation for a single trial as to all issues. However, Barr will not be required to provide discovery with regard to its legal opinions at this time. At trial, the Court will permit the parties to address all relevant issues of infringement, validity and willfulness. At the conclusion of the presentation of all the evidence pertaining to liability, however, the Court will divide the fact-finding and charge the jury, on the premise that the case is so to be tried, to adjudicate liability and defer consideration of the willfulness claims. In the event the jury reaches a determination of validity and infringement, the Court will then direct the same panel, after a brief pause in the proceedings, to turn attention to a finding with regard to the claim of willfulness, on the basis of the evidence then on the trial record, but supplemented by limited additional discovery the Court will permit at that time strictly confined to Barr's legal opinions, should Barr then choose to waive its privilege. *See Amsted Indus. v. National Castings, Inc.,* No. 88 Civ. 924, 1990 WL 106548, at *2–3 (N.D.Ill. July 11, 1990) (allowing evidence relevant to willfulness to be presented to the same jury in phases, deferring the bulk of it until after the jury had determined patent infringement).

The Court acknowledges that in the ordinary case when bifurcation is authorized, the consequence is two separate trials, usually before a different jury. *See, e.g., Allergan,* 2002 WL 1268047, at *2 n. 1. As discussed above, however, in many such situations bifurcation is also warranted by reason of damages claims, a consideration not presented here. *See Aptargroup,* 2003 WL 21557632, at *1 ("The district courts are reluctant to bifurcate ... if there is not a good reason to bifurcate damages as well, or if it is uncertain that the party faces the '*Quantum dilemma*' ...."). The Court has weighed

carefully that the proposed procedure may require some interruption of the trial, which the court would contemplate extending to no more than two or three days,[7] to accommodate the additional discovery and related preparation. Here, though Barr asserts that its legal opinions encompass 1200 pages and multiple volumes of accompanying materials, they were apparently all prepared by the same counsel. The additional discovery therefore would exclude collateral issues and witnesses, and be confined to what the attorneys advised the client, not to the wisdom or correctness of the opinions. *See Yamaha*, 59 U.S.P.Q.2d at 1090–91.

On balance, the Court is persuaded that, taking into account all the circumstances and competing interests involved, the burdens attendant to this approach would be modest compared to those implicated in having to commence preparation anew for an entire new trial limited to willfulness. Should liability be found, the same jury would already have familiarity with the relevant issues, with parties and their representatives, and possibly with some of the same witnesses. Supplementing the evidence concerning willfulness should not present any insurmountable difficulties. If the jury were to find no liability, at the very worse they would have heard some evidence relating to an issue which in the end they would not be called upon to decide. Given that, as discussed above, matters concerning infringement are often closely interlaced with questions of the infringer's state of mind and related facts underlying the alleged infringement, the Court sees no potential prejudice in allowing the jury to hear evidence of all of the issues in the case, but separating their determination as outlined here. This procedure and its potential consequences would not be materially different from the procedural result that would obtain were the Court to exercise its discretion, as many other courts have done, to deny bifurcation altogether and proceed from the start with a single proceeding unified throughout for all purposes. *See, e.g., Cardiac Pacemakers*, 2001 WL 699856, at *2; *Gaus*, 2000 WL 1277365, at *3; *Intellectual Prop. Dev.*, 34 U.S.P.Q.2d at 1607; *THK Am., Inc.*, 151 F.R.D. at 629.

Indeed, the Court fails to see why, except in a uniquely complex case, in which, in the interest of simplifying the trial, discrete issues should be separated, combining jury consideration of issues of liability and the alleged willfulness of the conduct at issue should be any more potentially confusing and prejudicial in patent cases than it is in the vast majority of other causes of action juries adjudicate routinely that entail a simultaneous determination of liability and intent or other relevant state of mind integral to support a verdict on the claim. Our judicial system would collapse if adjudication in a unitary trial of the issues of liability and the state of mind associated with the underlying conduct were deemed inherently confusing to the jury and prejudicial to any party, thus constituting sufficient justification to bifurcate every trial into these respective components.

## II. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that defendant Barr Laboratories's ("Barr") motion to bifurcate consideration of this action so as to address liability and willfulness issues in separate trials and to stay discovery with respect to willfulness is granted in part and denied in part; and it is further

**ORDERED** that discovery shall proceed with regard to all issues, except with regard to Barr's counsel's opinions and related documents, which may be subject to discovery at the time and under the circumstances discussed above; and it is further

**ORDERED** that adjudication of all matters now at issue shall proceed in a single trial, except insofar as consideration of the claim of willful infringement may be phased and determined separately as discussed above.

**SO ORDERED.**

---

7. To minimize inconvenience, some of this time possibly could be scheduled toward the conclusion of the trial or during jury deliberations, if necessary on weekend days.